UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-61128-Civ-Lenard
      (07-60061-Cr-Lenard)
MAGISTRATE JUDGE P. A. WHITE

CLAUDE J. ANDRE,                    :

          Movant,                   :

                                         REPORT OF MAGISTRATE
v.                                  :     JUDGE FOLLOWING
                                         EVIDENTIARY HEARING
UNITED STATES OF AMERICA,           :

          Respondent.               :
_____

## Introduction

     This matter is before this Court on the movant's motion to
vacate pursuant to 28 U.S.C. §2255, attacking his conviction and
sentence for conspiracy to possess with intent to distribute five
kilograms or more of cocaine and possession of a firearm during a
drug trafficking crime, entered following a guilty plea in case no.
07-Cr-60061-Lenard.

     The Court has reviewed the motion (Cv-DE#1), the government's
answer (Cv-DE#5), the movant's memorandum of law (Cv-DE#6), the
movant's response to the government's answer (Cv-DE#7), the Pre-
sentence Investigation Report (PSI), and all pertinent portions of
the underlying criminal file.

## Claims Raised

     Construing the movant's arguments liberally as afforded *pro se*
litigants pursuant to Haines v. Kerner, 404 U.S. 419 (1972), the
movant appears to raise the following claims in his §2255 motion:

1

1. The movant was denied effective assistance of counsel when his attorney failed to file a direct appeal after being requested to do so. (Cv-DE#1:5).

2. The movant was denied effective assistance of counsel when his attorney failed to challenge the movant's career offender status. (Cv-DE#1:6).

3. The movant was denied effective assistance of counsel when his attorney failed to challenge the charges on the basis that they involved an informant for the government who never had any drugs in his possession or on the basis that an informant cannot conspire with a conspiracy. (Cv-DE#3).

4. The movant was denied effective assistance of counsel when his attorney failed to advise him regarding the benefits of pleading guilty versus proceeding to trial. (Cv-DE#1:9).

5. The movant was denied effective assistance of counsel when his attorney failed to argue that possession of a weapon is not a violent offense and accordingly, he should not have been sentenced as an armed career offender. (Cv-DE#1:9(b)).

In his memorandum of law, filed on September 17, 2008, the movant raised two additional claims. (Cv-DE#6). Although the movant's claims were filed beyond the one year statutory period, they will be addressed on the merits.

6. The movant is actually innocent of the offenses. (Cv-

DE#6:iii).

7. The movant's guilty plea was involuntarily and unknowingly entered into. (Cv-DE#6:iii).

After review of the record, it was determined that evidentiary findings and oral argument was required with respect to **claims one and four**, as listed above. An order was entered appointing Omar G. Johansson, Esquire, to represent the movant, and an evidentiary hearing was thereafter scheduled for June 2, 2009.

<u>Factual History</u>

The factual history of the underlying criminal case reveals that in January of 2007, a confidential informant approached ATF SA Steve McKean and advised that he knew another individual, named "Manny," who was in possession and willing to sell firearms. (PSI¶7). "Manny" was later identified as Emmanuel Ambrosio and it was learned that he was involved in home invasion robberies. (<u>Id.</u>). Thereafter, on January 18, 2007, the CI accompanied Agent McKean to Ambrosio's residence; only the CI entered the residence. (PSI¶8). Shortly, the CI exited the residence carrying a black long gun case and gave the case to the agent. (Id.). The case contained a short barreled Remington and four 12 gauge shotgun shells. (<u>Id.</u>). After the agent provided the CI with $400 to pay Ambrosio for the shotgun, the agent and the CI left the residence. (Id.).

On January 30, 2007, agent McKean had a scheduled meeting with the CI and Ambrosio wherein the CI introduced the agent to Ambrosio. (PSI¶9). The agent told Ambrosio that he was a disgruntled narcotics courier for a Colombian narcotics organization. (PSI¶10). The agent further told Ambrosio that he was

3

trying to locate individuals who could rob cocaine from the organization. (<u>Id.</u>). Thereafter, the agent and Ambrosio discussed in detail the plans to rob the stash house and Ambrosio's plan to execute said robbery. (PSI¶¶11-14).

Then, on March 2, 2007, the agent contacted Ambrosio and informed him that the cocaine shipment would be in that evening and Ambrosio advised the agent that he and his associates were ready and had the necessary equipment for the robbery. (PSI¶24). Later that day, the CI and Ambrosio were observed by surveillance units in Hallandale Beach Boulevard. (<u>Id.</u>). Two individuals arrived in a burgundy Ford Taurus and entered the vehicle driven by the CI, which was followed by law enforcement. (<u>Id.</u>). The vehicle was followed to a gas station, where the agent met with the CI, Ambrosio and two unidentified men. (<u>Id.</u>). The four subjects remained in their vehicle and followed the agent to his warehouse. (<u>Id.</u>). The two male subjects were later identified as the movant, Claude Andre, and Romial Jacques. (<u>Id.</u>).

Once inside the warehouse, the plans were finalized. (PSI¶25). During the course of the meeting, Ambrosio explained the robbery scenario to the movant and Jacques. (<u>Id.</u>). The agent also reiterated his position with the Colombian drug organization, why he wanted to rob the cocaine from the organization, and the fact that there would be at least 15 kilograms of cocaine in the house. (<u>Id.</u>). Both the movant and Jacques described how they would hide inside the agent's trunk and come out of the truck and surprise the guards. (PSI¶26). When the agent questioned the idea, since the organization would know his involvement and kill his family, the movant and Jacques stated that it would not be a problem because they planned to kill the guard. (<u>Id.</u>). Moreover, Ambrosio stated that he would be outside communicating with the movant and Jacques

via walkie talkies. (PSI¶27). Ambrosio further warned the agent about being flamboyant with his cut of the robbery proceeds. (Id.).

Thereafter, the movant stated that they were ready to go and had their handguns; he displayed a Glock handgun to the agent. (PSI¶28). A short time later, the subjects were arrested without incident. (Id.). Following the arrest, specific to the movant, a Glock, model 23, .40 caliber semi-automatic pistol loaded with fifteen rounds of .40 caliber ammunition was located in his waistband.

The movant provided a post-arrest statement, in which he stated Ambrosio had called him several days earlier and told him that he wanted the movant to accompany him to a meeting. (PSI¶30). The movant stated that prior to the meeting, he did not know the CI. (Id.). He further stated that when he met with Ambrosio and the CI, he was unaware of the meeting's purpose, but knew he was going to see a guy who was going to inform him about getting some money. (Id.). The movant also stated that upon arriving at the warehouse, he and his cousin, Jacques, were handed guns by the CI. (Id.). Although the movant was unaware what the guns were for, he nevertheless placed it in his waistband and went inside where a guy proceeded to tell them about a cocaine stash house he wanted them to rob. (Id.).

## Procedural History

The procedural history of the underlying criminal case reveals that on March 13, 2007, the movant was charged by way of indictment with conspiracy to interfere with commerce by robbery, in violation of 18 U.S.C. §1951(a) (Count Two); conspiracy to possess with intent to distribute five kilograms or more of cocaine, in

violation of 21 U.S.C. §841(a)(1), all in violation of 21 U.S.C. §846 (Count Three); conspiracy to use and carry a firearm during and in relation to a crime of violence and during and in relation to a drug trafficking crime and to possess said firearm in furtherance of such crimes, in violation of 18 U.S.C. §924(c)(1)(A), all in violation of 18 U.S.C. §924(o) (Count Four); attempt to possess with intent to distribute five kilograms or more of cocaine, in violation 21 U.S.C. §841(a)(1), all in violation of 21 U.S.C. §846 and 18 U.S.C. §2 (Count Six); knowingly carrying a firearm during and in relation to a crime of violence, and during and in relation to a drug trafficking crime and possessing said firearm in furtherance of such crimes, all in violation of 18 U.S.C. §§924(c)(1) and (2) (Count Seven); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §922(g)(1) (Count Eight). (Cr-DE#14).

On May 9, 2007, pursuant to a negotiated plea agreement, the movant pleaded guilty to Counts Three and Seven of the indictment. (Cr-DE#32).

A PSI was prepared in anticipation of sentencing, wherein the probation officer determined that Count Seven is excluded from the grouping rules because it required a minimum five year term of incarceration to run consecutively to any other term of imprisonment. (PSI¶37). The guideline for Count Three was found in U.S.S.G. §2D1.3(a)(3), which provides that an offense involving at least 15 but less than 50 kilograms of cocaine has a base offense level of 34. (PSI¶38). However, because the movant demonstrated acceptance of responsibility for his offense, his base offense level was reduced by three levels. (PSI¶¶45,46). Thus, his total offense level was set at 31. (PSI¶47).

The probation officer further determined the movant had a total of four criminal history points and a criminal history category of III. (PSI¶52). Based on a total offense level of 31 and a criminal history category of III, the guideline imprisonment range was 135 to 168 months. (PSI¶80).

On July 30, 2007, the movant appeared for sentencing wherein the District Court sentenced him to 135 months imprisonment as to Count Three, 60 months imprisonment as to Count Seven, to run consecutively, a total of 5 years of supervised release and a special assessment of $200. (Cr-DEs#48,52). The Clerk entered judgment on July 31, 2007. (Cr-DE#52). No direct appeal was filed. The judgment of conviction became final at the latest on August 14, 2007, ten days after the entry of judgment, when time expired for filing a notice of appeal.[1] This motion to vacate was timely filed less than one year later on July 6, 2008. (Cv-DE#1).

<u>Evidentiary Hearing</u>

In his motion, the movant asserts that his lawyer was ineffective because counsel failed to file a direct appeal, after being requested to do so and counsel failed to advise him regarding the benefits of pleading guilty versus proceeding to trial. The claims were not conclusively refuted by the record, and warranted further evidentiary findings. At the June 2, 2009 evidentiary

---

[1] Where, as here, a defendant does not pursue a direct appeal, the conviction becomes final when the time for filing a direct appeal expires. <u>Adams v. United States</u>, 173 F.3d 1339, 1342 n.2 (11th Cir. 1999). The time for filing a direct appeal expires ten days after the judgment or order being appealed is entered. Fed.R.App.P. 4(b)(1)(A)(I). The judgment is "entered" when it is entered on the docket by the Clerk of Court. Fed. R. App. P. 4(b)(6). On December 1, 2002, Fed.R.App.P. 26; which contains the rules on computing and extending time, was amended so that intermediate weekends and holidays are excluded from the time computation for all pleadings due in less than 11 days.

hearing, testimony was taken from the movant, his brother, his fiancé and his criminal defense attorney, David Howard, Esq.

On the morning of the hearing, the movant individually and through counsel advised the Court on the record that he was withdrawing **claim four**, that he was denied effective assistance of counsel when his attorney failed to advise him regarding the benefits of pleading guilty versus proceeding to trial. The Court instructed movant's counsel to conduct a thorough colloquy on the record, which he did, which established that the movant's decision was knowing and voluntary and that he was of sound mind.

*Law on Direct Appeal:*

Counsel's failure to file a direct appeal after being underlined(requested) to do so by his client results in a underlined(per se) constitutional violation of the movant's Sixth Amendment right to counsel, which entitles the movant to an appellate proceeding. Roe v. Flores-Ortega, 528 U.S. 470 (2000) ("we have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable").

There is a presumption of prejudice "with no further showing from the defendant of the merits of his underlying claims when the violation of the right to counsel rendered the proceeding presumptively unreliable or entirely nonexistent." Roe v. Flores-Ortega, supra at 484. A defendant need not establish that his direct appeal would have been arguably meritorious; he need only show that his counsel's constitutionally deficient performance deprived him of an appeal he would have otherwise taken--i.e., the defendant expressed to his attorney a desire to appeal. Id.; see

also, McElroy v. United States, 2007 WL 4393955, *1 (11th Cir. 2007); Gomez-Diaz v. United States, 433 F.3d 788, 792 (11th Cir. 2005).

Even if the defendant contractually waived the right to appeal, counsel may be ineffective for not filing a notice of appeal when directed to by the defendant because the merits of an appeal are not to be considered when determining whether an out-of-time appeal should be permitted. Gaston v. United States, 237 Fed.Appx. 495, 497 (11th Cir. 2007). Likewise, the defendant need not show that there were viable grounds for such an appeal. Martin v. United States, 81 F.3d 1083 (11th Cir. 1996); Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995); Restrepo v. Kelly, 178 F.3d 634, 641-42 (2d Cir. 1999)(holding that a habeas petitioner alleging ineffective assistance of counsel based on counsel's failure to file a requested notice of appeal need not demonstrate that his defaulted appeal would have succeeded in order to establish prejudice sufficient for habeas relief).

The law is also clear that appellate counsel must both perfect an appeal and file a brief to perform effectively as an advocate. Cannon v. Berry, 727 F.2d 1020 (11th Cir. 1984); Mylar v. Alabama, 671 F.2d 1299 (11th Cir.), rehearing denied en banc, 677 F.2d 117 (1982); Perez v. Wainwright, 640 F.2d 596 (5th Cir. 1981). The failure to do so constitutes ineffective assistance, per se, so that habeas corpus relief in such cases does not depend on a showing of actual prejudice. Cannon v. Berry, supra. In the case of appeal following a guilty plea, however, the defendant is entitled to an out-of-time appeal of sentencing issues only. Id. Only sentencing claims may be raised on an appeal-out-of-time following a plea because "the few grounds upon which the guilty plea may be challenged are not limited to direct appellate review,

but instead are more appropriately raised in §2255 proceedings." Montemoino at 417.

However, if the movant is silent on whether he wished to file an appeal or not, a Strickland[2] analysis must be undertaken, Roe v. Flores-Ortega, supra, and it must first be determined whether counsel actually consulted with the defendant about an appeal. If so, counsel is only ineffective if he failed to file an appeal after being requested to do so. If counsel has not consulted with the defendant about the advantages and disadvantages of prosecuting a direct appeal, then a second question must be asked: whether counsel's failure to so consult constitutes deficient performance. Id. Counsel's performance is deemed deficient when "there is reason to think either (1) that a rational defendant would want to appeal (for example when there are nonfrivolous grounds for appeal) or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. The Court noted that a "highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea[3]," but cautioned that all relevant factors must be examined, and expected that in the "vast majority of the cases," courts will find "that counsel had a duty to consult with the defendant about an appeal." Id.

*Testimony: Yves Cadet*

The movant's brother, Yves Cadet, testified that he hired

---

[2]Strickland v. Washington, 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance, a movant must demonstrate that his attorney's efforts fell below constitutional standards, and that he suffered prejudice as a result.

[3]The court noted that a guilty plea reduces the scope of potentially appealable issues and may indicate that the defendant seeks an end to judicial proceedings.

attorney David Howard to represent the movant in the underlying criminal proceeding. Mr. Cadet attended both the change of plea hearing and the sentencing hearing. He further testified that he discussed with counsel regarding filing an appeal on behalf of the movant immediately following the conclusion of the sentencing hearing, while still in the courtroom. It was Mr. Cadet's feeling that counsel never really explained the details of the case with the movant. After instructing counsel to file the appeal, counsel informed him that doing so was not in the movant's best interest.

On cross-examination, Mr. Cadet testified that he had no first hand knowledge whether counsel and the movant discussed an appeal. Mr. Cadet was aware that pursuant to the plea agreement, the movant agreed to cooperate with the government. However, he was unaware that if the movant chose to proceed with cooperation, he was ineligible to pursue an appeal.

On re-direct, Mr. Cadet testified that the movant informed him he wanted to appeal and counsel also informed Mr. Cadet that the movant requested an appeal.

*Testimony: Donna Bogris*

Donna Bogris, the movant's fiancé, was also involved in the hiring of defense counsel. She too attended the change of plea hearing and the sentencing hearing. Ms. Bogris testified that she informed attorney Howard, after sentencing, that the movant wanted to file an appeal. Moreover, she testified that based on her conversations with the movant, she knew that the movant himself requested a direct appeal.

Likewise, the movant attempted to contact counsel to request

11

a direct appeal, however, because counsel avoided the movant's phone calls, Ms. Bogris made the request on his behalf. According to Ms. Bogris, she contacted counsel three times, prior to the expiration of the 10 days in which to file an appeal and in fact requested for an appeal to be filed.

On cross-examination, Ms. Bogris admitted that her knowledge of conversations between the movant and counsel came to her by way of the movant; she was never present during any meetings between the two. She further testified that between the change of plea and the sentencing hearing, the movant never expressed a desire to file an appeal. Moreover, although she was aware that the movant agreed to cooperate, she was unaware that he waived his appellate rights. Likewise, Ms. Bogris testified that pursuant to her conversation with the movant, it seemed that pursuing cooperation was the best course of action to have his sentenced reduced. As a result, the movant made efforts with the government to cooperate, however, she was unsure when the attempts were made other that they occurred after the change of plea hearing.

*Testimony: The Movant*

The movant testified he first requested an appeal on the day of sentencing and despite counsel's advice not to appeal, he nevertheless directed counsel to pursue one. The movant called his brother, Mr. Cadet, to inform him that despite his request for an appeal, counsel would not file one. In turn, Mr. Cadet called counsel and requested an appeal. Moreover, the movant also called his fiancé, Ms. Bogris, and requested her to contact counsel and direct him to file an appeal. It was the movant's testimony that Ms. Bogris, after contacting counsel, informed him that counsel believed an appeal was not beneficial. He further testified that

counsel failed to consult with him regarding his right to appeal, and not until the District Judge during the sentencing hearing informed him of this right, was he aware of the option.

Moreover, the movant testified that counsel never provided him with copies of the discovery and he was advised that his type of case would not win at trial. Likewise, counsel failed to provide any defenses for the charges brought against the movant. Not until the movant was imprisoned, did he learn, by way of other prisoners, of all the defenses counsel could have raised.

The movant further testified that he requested trial counsel to file objections to the PSI arguing that the drug amount did not exist, notwithstanding, counsel failed to file objections thereto.

On cross-examination, the movant testified that the first time he had any interest to appeal was on the day of sentencing. His family requested counsel to file an appeal, to which counsel said no. After sentencing, later in the day, the movant called his brother and directed Mr. Cadet to call counsel, which he thereafter did. As a result of his conversation with his brother, it was the movant's understanding that counsel's opinion had not changed; an appeal would not have been in the movant's best interest. Thereafter, the movant was unable to contact counsel again.

Contrary to his prior statements, the movant testified that an appeal was never discussed, but rather, counsel informed him that his only chance of reducing his sentence was through cooperation. As a result, the movant attempted to cooperate with the government. It is important to note that during cross-examination when the government began questioning the movant regarding his change of plea hearing, it appears that the movant contended the knowingness

and voluntariness of his guilty plea; this issue is addressed _infra_ in **claim seven** of this report.

_Testimony: Counsel_

Counsel, David Howard, a seasoned attorney, represented the movant during the underlying criminal case. According to counsel, there was no good option for the movant since he faced a minimum of 15 years, unless he proceeded to cooperate with the government. As such, counsel advised him to take the plea and cooperate. Counsel testified that he discussed the merits of the case, the discovery and the success of trial with the movant. Moreover, counsel testified that the movant knew his options despite him not liking them. There was never a point in time wherein the movant expressed a desire or lack of desire to enter into a change of plea. There were never any discussions, neither prior to nor subsequent to sentencing, wherein the movant expressed his interest in withdrawing his guilty plea.

Attorney Howard further testified that there was never a conversation regarding the movant's interest in filing an appeal. Prior to sentencing, counsel thoroughly reviewed the PSI with the movant. At the time of sentencing, the movant was completely aware of what he was going into. He was thereafter sentenced at the low end of the guidelines.

Counsel further testified that there was a time, mainly by proxy with family, that the movant provided information pursuant to his cooperation agreement. Attempts to cooperate began prior to the change of plea hearing when the ground work was being laid, however, not until after sentencing were phone calls made and information passed along to the case agent. Attorney Howard

14

testified that conversations regarding sentencing mainly occurred after sentencing and intermittently, with Mr. Cadet giving it a shot right until the end.

Moreover, counsel testified that all of his conversations with Mr. Cadet were strictly regarding cooperation, which continued well after the ten day period. There were no conversations, either with the movant or his family, regarding filing a notice of direct appeal.

On cross-examination, when questioned regarding the discovery in the underlying criminal case, counsel did not seem sure of exactly what steps he took in assuring the movant had all discovery matters. Although counsel did not have a specific recollection of reviewing the audio tapes with the movant, he testified that the movant was aware of the contents therein as a result of reviewing the transcripts with him. Notwithstanding, counsel was unsure whether he sent the movant copies of the transcripts and whether his file indicates, by way of a letter, that any such copies were sent. Despite remembering whether the movant had copies of the transcripts or whether he attended the PSI interview with the movant, counsel was certain that he reviewed all of the reports regarding pertinent information with the movant. Moreover, counsel was not sure whether the movant requested to review the audio tapes and whether the movant requested a review of the agency reports. According to counsel, the majority of their conversations focused on cooperation.

In regards to the PSI, counsel testified that he reviewed the PSI for any viable objections, while being mindful that making any disingenuous objections would hinder the movant's cooperation efforts. Although the movant did not like that he was charged for

15

a dry conspiracy, he never requested counsel to file objections thereto.

In regards to the request for an appeal, counsel testified the movant never requested him to file a notice of appeal. Moreover, counsel testified that in the few times meeting with Ms. Bogris, she never requested an appeal on the movant's behalf. On the same note, Mr. Cadet did not request an appeal either, but rather, all conversations with Mr. Cadet were in relation to cooperation as well.

*Analysis:*

In this case it is disputed whether Mr. Howard, after sentencing, failed to file the appeal as requested to do so.

Having carefully attended to the testimony at the evidentiary hearing, the witnesses' demeanor and the record as a whole, the undersigned credits the testimony of movant's counsel, Attorney Howard, that the movant never indicated he wanted to pursue a direct appeal, but rather his efforts and those of his family members was directed to pursing cooperation. Moreover, this court accepts counsel's testimony that the movant was solely interested in pursuing any possibility of cooperation with the government. The court is not persuaded and finds disingenuous the movant's testimony that despite never inquiring as to the status of his direct appeal, he insisted that counsel file a direct appeal.

This court further finds that the movant did nothing to verify the status of his direct appeal, or to insure that his appellate rights were preserved. Although the movant, along with his family attempted to contact counsel, and at time were successful in doing

16

so, this court finds that all efforts were in pursuit of a Rule 35 motion. The movant has not sufficiently refuted counsel's credible testimony and has failed to meet his burden.

Even if it is found that the movant was silent on whether he wished to file an appeal, counsel did not have an absolute duty to consult with the movant the advantages and disadvantages of an appeal. As discussed above, if the record is inconclusive as to whether the defendant requested an appeal and counsel thereafter did not consult with the defendant, counsel's performance is deficient when there is reason to think either (1)that a rational defendant would have wanted to appeal or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. It is evident from the record that a reasonable defendant in the movant's situation would not have wanted to appeal, as he received a sentence at the low end of the guidelines in conjunction with the mandatory consecutive sentence of five years and he vigorously pursued his cooperation efforts with the government. Moreover, it is axiomatic that the movant did not reasonably demonstrate to counsel that he was interested in appealing. Under these circumstances, Attorney Howard was not ineffective for failing to file an appeal.

## Remaining Claims

First, it should be noted that the foregoing claims could have been, but were not raised on direct appeal. Notwithstanding, construing the arguments made by the movant in support thereof, he appears to argue that counsel was ineffective for failing to pursue the claims. A claim of ineffective assistance of counsel may constitute cause for failure to previously raise the issue. United States v. Breckenridge, 93 F.3d 132 (4th Cir. 1996). Attorney

17

error, however, does not constitute cause for a procedural default unless it rises to the level of ineffective assistance of counsel under the test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984); <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). Thus, the claims will be identified in this Report, <u>infra</u>.

In order for the movant to prevail on a claim of ineffective assistance of counsel, he must establish that 1) his counsel's representation fell below an objective standard of reasonableness; and 2) but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different.  <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied.  <u>Id.</u> at 697; <u>Waters v. Thomas</u>, 46 F.3d 1506, 1510 (11th Cir. 1995). Prejudice in the sentencing context requires a showing that the sentence was increased due to counsel's error. <u>Glover v. United States</u>, 531 U.S. 198, 203-04 (2001).

In the context of a case in which guilty pleas or the equivalent were entered, application of the second prong of the two-pronged <u>Strickland</u> standard requires a showing that there is a reasonable probability that but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial. <u>Hill v. Lockhart</u>, 474 U.S. 52 (1985). The movant does not claim that but for counsel's alleged deficient performance, he would not have pleaded guilty and would have proceeded to trial.

Moreover, review of counsel's conduct is to be highly deferential. <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1039 (11th Cir. 1994), and second-guessing of an attorney's performance is not permitted. <u>White v. Singletary</u>, 972 F.2d 1218, 1220 ("Courts should

at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); <u>Atkins v. Singletary</u>, 965 F.2d 952, 958 (11th Cir. 1992). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." <u>Rogers v. Zant</u>, 13 F.2d 384, 386 (11th Cir. 1994).

In **claim two**, the movant asserts he was denied effective assistance of counsel when his attorney failed to challenge the movant's career offender status. (Cv-DE#1:6). Although it appears the movant concedes that the government is correct in stating that he is not a career offender (Cv-DE#7:4), the claim will be addressed on the merits.

First, it is apparent, after a review of the PSI, that the movant was not classified as a career offender. As such, his base offense level, and therefore his sentence, were not enhanced accordingly. Therefore, to the extent the movant argues his sentence was inappropriately enhanced pursuant to his classification as a career offender, this claim is without merit.

Moreover, to the extent the movant argues that his sentence should be reduced based on the recent Amendment to the U.S. Sentencing Guidelines, specifically, Amendment 706, this claim is also without merit.

In 2007, the United States Sentencing Commission amended U.S.S.G. §2D1.1 in an effort to alleviate the Guidelines' disparate treatment of offenders convicted of possession of different forms of cocaine. <u>See</u> U.S.S.G.App.C, Amend. 706 (2007). For example, prior to the revision, drug offenders who were convicted of

possessing 5 grams of crack cocaine received the same base offense level as offenders who were convicted of possessing 500 grams of powder cocaine. With Amendment 706, the Sentencing Commission sought to reduce this so-called "100-to-1 drug quantity ratio" by lowering the base offense level for a given amount of crack cocaine by two levels. Thus, where a defendant convicted of possession of at least 50 grams but less than 150 grams of crack cocaine prior to the effective date of the amendment would have received a base offense level of 32, application of the revised guidelines to the same amount of crack cocaine today generally results in a base offense level of 30.

In this case, it appears the movant premises this particular claim on Amendment 706. Amendment 706 generally reduces the offense levels applicable to crack cocaine offenses under U.S.S.G. § 2D1.1 by two levels. The Sentencing Commission has included Amendment 706 on the list of Amendments in section 1B1.10(c) of the Sentencing Guidelines which may be applied retroactively.

Jurisdiction to grant a sentence reduction in this case is derived from 18 U.S.C. § 3582(c)(2), which provides:

> [i]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994, upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The applicable policy statement in this regard is U.S.S.G. §1B1.10, which provides, in part, that a court may reduce a defendant's term of imprisonment under §3582(c)(2) if "the guideline range applicable to that defendant has subsequently been

lowered as a result of an amendment to the Guidelines Manual listed in subsection (c) ....” U.S.S.G. §1B1.10(a)(1). Amendments 706 and 711 are listed in U.S.S.G. §1B1.10(c), and, as such, can be applied retroactively.

Notwithstanding, it does not appear that the movant is entitled to relief on these claims because his sentence was not based on an offense involving crack cocaine. See United States v. Mack, 311 Fed. Appx. 285 (11th Cir. 2009); United States v. Mendoza, 282 Fed. Appx. 487 (8th Cir. 2008); United States v. Lawrence, 2009 WL 1372918 (N.D. Okla. 2009). As discussed above, “Amendment 706 is a retroactive amendment that addressed the Sentencing Commission’s concern over inequity of the powder cocaine to crack cocaine ratio.” United States v. Lawrence, 2009 WL 1372918. Accordingly, the enactment of Amendment 706 lowered the base offense by two levels for most offenses involving crack cocaine. See Guidelines Manual, Supplement to Appendix C, p. 226-231. As may be recalled, the movant was charged and pleaded guilty to conspiracy to possess with intent to distribute five kilograms or more of cocaine. The sentencing court found that U.S.S.G. §2D1.1 was applicable and the movant was found responsible for conspiring to posses with intent to distribute at least 15 but less than 50 kilograms of cocaine. The sentencing court further found that this quantity of cocaine resulted in a base offense level of 34. The movant was convicted of an offense that involved powder cocaine, not crack cocaine. As previously mentioned, powder cocaine was not within the purview of Amendment 706; thus, the amendment is not applicable to this case.

In **claim three**, the movant asserts he was denied effective assistance of counsel when his attorney failed to challenge the charges on the basis that they involved an informant for the

government who never had any drugs in his possession or on the basis that an informant cannot conspire with a conspiracy. (Cv-DE#1:8). The thrust of the movant's argument appears the movant cannot conspire with himself or with law enforcement agents. (<u>Id</u>.).

In order to prove conspiracy, the government must prove that an agreement existed between two or more persons to commit a crime and that the defendants knowingly and voluntarily joined or participated in the illegal venture. <u>United States v. Vera</u>, 701 F.2d 1349, 1357 (11th Cir. 1983). While it is legally impossible to conspire with a government agent, conversations between a defendant and an agent may be used as proof of the defendant's involvement in a conspiracy. <u>United States v. Kelly</u>, 888 F.2d 732 (11th Cir. 1989); <u>United States v. Lively</u>, 803 F.2d 1124 (11th Cir.1986); <u>United States v. Peagler</u>, 847 F.2d 756 (11th Cir.1988)(conspiracy may be proved by direct or circumstantial evidence, and may be inferred from conduct of participants); <u>United States v. Elledge</u>, 723 F.2d 864, 866 (11th Cir.1984)(conversations between defendant and informant can constitute evidence of conspiracy between defendant and third party).

The factual proffer set forth in the plea colloquy reveals that the movant conspired with individuals other than the confidential source in this illegal venture. Thus, any argument to the contrary must fail.

In **claim five**, the movant asserts he was denied effective assistance of counsel when his attorney failed to argue that possession of a weapon is not a violent offense and accordingly, he should not have been sentenced as an armed career offender. (Cv-DE#1:9(b)). According to the movant, his convictions and sentences should be vacated in light of the Supreme Court's decision in <u>Begay</u>

v. United States, ___ U.S. ___, 128 S.Ct. 1581 (2008),[4] and the Eleventh Circuit's interpretation thereof in United States v. Archer, 531 F.3d 1347 (11th Cir. 2008).[5] It is his contention that Begay and Archer eliminate the predicate crime of carrying a concealed firearm as a violent felony for purpose of determining his status as a career offender.

Although a review of the movant's response to the government's answer reflects that he concedes that he is not an armed career offender, the thrust of his argument therein, appears that he nevertheless challenges his charge of possession of firearm because it was not a violent offense. (Cv-DE#7:4). As such, the claim will be addressed on the merits.

Although the movant is correct that both Begay and the Eleventh Circuit's interpretation thereof in Archer, eliminate the predicate crime of carrying a concealed weapon as a violent felony for purposes of determining career offender status, he again, appears to misunderstand the implication of his guilty plea to Count Seven, possession of a firearm during a drug trafficking crime.

A review of the PSI indicates that the movant was not classified as an armed career offender. As such, his base offense

---

[4]In Begay, the Supreme Court held that to qualify as an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another" under the Armed Career Criminal Act's definition of "violent felony," 18 U.S.C. §924(e)(2)(B)(ii), a crime must "typically involve purposeful, 'violent,' and 'aggressive' conduct." Begay, 128 S.Ct. at 1586-1588 (drunk driving did not qualify as violent felony).

[5]In Archer, the Eleventh Circuit interpreted Begay and abrogated its prior precedent in United States v. Gilbert, 138 F.3d 137, 1372 (11th Cir. 1998), now holding that carrying a concealed firearm does not involve aggressive or violent conduct, nor does it present a serious potential risk of physical injury to another, and therefore is not a crime of violence for purposes of the armed career criminal enhancement.

level, and therefore his sentence, were not enhanced accordingly. Therefore, his claim is without merit.

Moreover, pleading guilty to possession of a firearm is diametrically opposed to receiving an enhancement for a prior conviction for possession of a firearm. In the latter scenario, a defendant's criminal history is utilized to appropriately assess the defendant's criminal history category, which in conjunction with the base offense level, results in an imprisonment range. In the former scenario, "possession of a firearm" is the formal accusation of the defendant committing the criminal offense and accordingly, the term "violent felony" is inapplicable. "Violent felony" is only utilized to determine whether a defendant's prior conviction could be used to classify the defendant as an armed career criminal.

In the recent decision of Begay, the Supreme Court held that to qualify as an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another" under the Armed Career Criminal Act's definition of "violent felony," 18 U.S.C. §924(e)(2)(B)(ii), a crime must "typically involve purposeful, 'violent,' and 'aggressive' conduct." Begay, 128 S.Ct. at 1586-1588 (drunk driving did not qualify as violent felony).

In Archer, the Eleventh Circuit interpreted Begay and abrogated its prior precedent in United States v. Gilbert, 138 F.3d 137, 1372 (11th Cir. 1998), now holding that carrying a concealed firearm does not involve aggressive or violent conduct, nor does it present a serious potential risk of physical injury to another, and therefore is not a crime of violence for purposes of the armed career criminal enhancement.

24

Accordingly, the movant's charge for possession of firearm was appropriately used to determine his base offense level only. Thus, both Begay and Archer are inapplicable as the movant's PSI fails to reflect any prior conviction for carrying a concealed firearm, which explains why the he was not classified as an armed career offender. Under these circumstances, no deficient performance or prejudice has been established pursuant to Strickland, supra, and the movant is therefore entitled to no relief on the claims.

In **claim six**, the movant asserts he is actually innocent of the offenses. (Cv-DE#6:iii). The movant fails to provide any facts or law in support thereof.

First, the movant's protestations of innocence in this motion to vacate are without substantiation in the record. A habeas petitioner attempting to establish "actual innocence" must meet a high standard. Bousley v. United States, 523 U.S. 614 (1998). The movant must demonstrate that "in light of all the evidence, 'it is more likely than not that no reasonable juror would have convicted him.'" Bousley, supra at 623, quoting, Schlup v. Delo, 513 U.S. 298, 327-328 (1995). The Court emphasized that actual innocence means factual innocence, not mere legal insufficiency. Id. See also High v. Head, 209 F.3d 1257 (11th Cir. 2000); Lee v. Kemna, 213 F.3d 1037, 1039(8th Cir.2000); Lucidore v. New York State Div. of Parole, 209 F.3d 107 (2nd Cir. 2000);citing Schlup v. Delo, 513 U.S. 298, 299,_(1995); Jones v. United States,153 F.3d 1305 (11th Cir. 1998)(holding that appellant must establish that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him). To be credible, a claim of actual innocence requires the petitioner to "support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts,

or critical physical evidence--that was not presented at trial." Schlup v. Delo, 513 U.S. at 324. All things considered, the evidence must undermine the Court's confidence in the outcome of the trial. Id. at 316. No such showing has been made here. As such, this claim is without merit.

In **claim seven**, the movant asserts that his guilty plea was involuntarily and unknowingly entered into. (Cv-DE#6:iii).

To ensure that a plea is voluntary and knowing, Fed.R.Cr.P. 11(b)(1) states that "the court must address the defendant personally in open court before accepting the plea and inform the defendant of, and determine that the defendant understands . . . the nature of each charge to which the defendant is pleading." Gordon v. United States, 496 F.3d 1270, 1277 (11th Cir. 2007). The rule imposes upon a district court the obligation and responsibility to conduct a search inquiry into the voluntariness of a defendant's guilty plea. Id. (citations omitted).

Thus, "[a] court accepting a guilty plea must comply with Rule 11 and specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (2005). In Moriarty, the Eleventh Circuit specifically held as follows:

> [t]o ensure compliance with the third core concern, Rule 11(b)(1) provides a list of rights and other relevant matters about which the court is required to inform the defendant prior to accepting a guilty plea, including: the right to plead not guilty (or persist in such a plea) and to be represented by counsel; the possibility of forfeiture; the court's authority to order restitution and its obligation to apply the Guidelines; and the Government's right, in a prosecution for

```
                    perjury, to use against the defendant any statement that
                    he gives under oath.
```

Id.

Review of the change of plea proceedings reveals that the Court conducted a thorough Rule 11 proceeding. (Cv-DE#10,Ex.3). At that time, the movant acknowledged under oath[6] that he was satisfied with counsel's representation, he and counsel reviewed every provision of the plea agreement, they spoke about the indictment and they discussed the counts, the charges and respective sentence. (Id.:6, 24-32). The Court further advised and the movant acknowledged the potential consequences of entering a guilty plea. (Id.:6-8,20-21,36). The movant also denied being forced, threatened or coerced into changing his plea, and denied being made any representations in order to convince him to plead guilty. (Id.:23-24,33-34). The Court further advised the movant of the essential elements of the offenses, as well as, the fact that as to Count Three, the maximum possible penalty of confinement provided by law was up to life imprisonment; and as to Count Seven, the minimum penalty of confinement was five years consecutive to any other term of imprisonment. (Id.:8-10,17-18).

Therefore, the movant knew at the time he pleaded guilty that his sentence may be up to life imprisonment, a more severe sentence than he actually received. See United States v. Pease, 240 F.3d 938 (11th Cir. 2001). Moreover, on the record before this Court, it is evident that the movant understood the facts and the elements of

---

[6]The law is clear that "solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988). The subsequent presentation of conclusory allegations, unsupported by specifics, is subject to summary dismissal, as are contentions which in the face of the record are wholly incredible.  Machibroda v. United States, 368 U.S. 487 (1962).

the offense upon which the charges rested. Under these circumstances, no showing has been made that the plea was anything but knowing and voluntary.

Accordingly, no showing has been made that the plea was anything but knowing and voluntary and the movant was fully aware of all potential consequences as a result of a guilty plea. Any misadvise by counsel resulting in deficient representation, was cured by the Court's colloquy.

<u>Conclusion:</u>

It is therefore recommended that the motion to vacate be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Dated this 11th day of June, 2009.

_____

UNITED STATES MAGISTRATE JUDGE

cc: Omar F. Guerra Johansson Esq.
    1 East Broward Boulevard
    Suite 700
    Ft. Lauderdale, FL 33301
    Phone: 954-745-7517
    Fax: 954-745-7518

    Anne Ruth Schultz, AUSA
    United States Attorney's Office
    99 NE 4 Street
    Miami, FL 33132
    Phone: 305-961-9117
    Fax: 305-530-7941

Bruce Brown, AUSA
United States Attorney's Office
500 East Broward Boulevard
7th Floor
Ft. Lauderdale, FL 33301
Phone: 954-356-7255,ext.3514
Fax: 954-356-7336